UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Robert Floyd,<br><br>                    Plaintiff,<br><br>        -against-<br><br>The City of New York; Lonnie Brown, in his individual capacity; Neil Lawson, in his individual capacity; Jason Hanna, in his individual capacity; Scott Roberts, in his individual capacity; and Angelica Salmeron, in her individual capacity;<br><br>                    Defendants | ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>12 Civ. 8135 (JPO) (RLE) |

## PRELIMINARY STATEMENT

1. This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the Defendants' commissions of acts under color of law in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

## JURISDICTION

2. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4).

## VENUE

4. Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

## JURY DEMAND

5. The Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

6. Plaintiff ROBERT FLOYD is a resident of New York.

7. Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within the State of New York.

8. The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court.  At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9. At all relevant times herein, DEFENDANTS LONNIE BROWN, NEIL LAWSON, JASON HANNA, SCOTT ROBERTS and ANGELICA SALMERON, (the "Individual Defendants"), were employed by the NYPD and were acting in the capacity of agent, servant, and employee of the City.

10. At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The Individual Defendants

were acting for and on behalf of the City at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City and incidental to the lawful pursuit of their duties as officers, employees and agents of the City.

11. The Individual Officers are sued in their individual capacities.

## STATEMENT OF FACTS

12. On the afternoon of November 10, 2009, plaintiff Robert Floyd was stopped while driving in a car near West 112th Street and Lenox Avenue. In the car with him were Michael McDermott and Jason Dixon.

13. Defendants Hanna and Lawson approached the car with their guns drawn and ordered Mr. Floyd and the other occupants out of the car.

14. Officer Lawson handcuffed Mr. Floyd behind his back. He was placed in a police van shortly thereafter.

15. The officers were without probable cause to arrest Mr. Floyd, who had done nothing wrong.

16. Mr. Floyd was taken in the police vehicle to the NYPD's 28th Precinct.

17. It was at the precinct that Mr. Floyd first encountered defendant Salmeron, who was his "arresting officer."

18. At the precinct, defendants Brown and Lawson subjected Mr. Floyd to a humiliating and degrading strip and visual body cavity search, in which he was forced against his will to take all his clothes off, squat, lift his genitals spread his buttocks and cough.

19. Mr. Floyd was eventually taken to Central Booking at 100 Centre Street in Manhattan.

20. After approximately two days in custody, he was finally brought before a judge and arraigned on a felony complaint (the "Felony Complaint") which charged him and two co-defendants with Criminal Possession of a Controlled Substance in or Near School Grounds (New York Penal Law ("PL") § 220.44(2)), Criminal Possession of a Controlled Substance in the Third Degree (PL § 220.39(1)) and Criminal Possession of a Forged Instrument in the Second Degree (PL § 170.25).

21. In the Felony Complaint, defendant Salmeron swore under penalties of prosecution that she observed Mr. Floyd engage in the sale of a controlled substance along with Michael McDermott and Jason Dixon and that she was informed that defendant Hanna recovered a "forged parking placard" from the car Mr. Floyd was driving.

22. Defendant Salmeron further swore in the Felony Complaint that she was informed by defendant Lawson that he recovered crack cocaine from a separately charged individual, Allen Jones.

23. At the time of Mr. Floyd's arrest, the Individual Defendants were all part of a team and were working together.

24. The allegations contained in the Felony Complaint were false.

25. As the arresting officer, defendant Salmeron also made out false police reports based on information provided by the Individual Defendants.

26. This notwithstanding, the false information was provided by one or more of the Individual Defendants, including Salmeron, to Assistant District Attorney David Nasar and/or other prosecutors at the New York County District Attorney's office.

27. Bail was set at $5,000 cash or bond with a surety examination ordered.

28.     The surety was approved and Mr. Floyd bailed out on or about November 23, 2012, after approximately 13 days in custody.

29.     At some point prior to December 1, 2009, Mr. Floyd was indicted along with his co-defendants and charged with Criminal Possession of a Controlled Substance in or Near School Grounds (PL § 220.44(2)), Criminal Possession of a Controlled Substance in the Third Degree (PL § 220.39(1)).  He was not charged with Criminal Possession of a Forged Instrument in the Second Degree (PL § 170.25).

30.     Mr. Floyd retained an attorney to represent him in the criminal case against him.

31.     After numerous court appearances, Mr. Floyd was acquitted of all the charges against him.

32.     The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004.

33.     This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Compliant, a *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C.§ 1983 Against the Individual Defendants

34. All other paragraphs herein are incorporated by reference as though fully set forth.

35. By arresting, detaining, strip searching, charging and prosecuting the Plaintiff, the Individual Defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to, *inter alia*, be free from unreasonable searches and seizures, false arrest and imprisonment, and malicious prosecution.

36. By providing false information to the New York County District Attorney's office that was likely to influence a jury's decision, the Individual Defendants engaged under color of law in the violation of the Plaintiff's right to a fair trial under the Sixth Amendment to the United States Constitution and 42 U.S.C. § 1983, and caused the depravation of the Plaintiff's liberty without due process of law.

## SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983 Against the City of New York

37. All other paragraphs herein are incorporated by reference as though fully set forth.

38. Municipal liability for the violations of plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

39. At all times material to this complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

40. At all times material to this complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of

failing to inform the Individual Defendants supervisors of their need to train, screen, supervise or discipline said defendants.  The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

WHEREFORE, the plaintiff requests that this Court:

    1.    Assume jurisdiction over this matter;

    2.    Award compensatory and punitive damages to plaintiff against the defendants, jointly and severally;

    3.    Award plaintiff reasonable costs, disbursements and attorneys fees; and

    4.    Grant any other relief the Court deems appropriate.

Dated: New York, New York
       November 7, 2012

Respectfully submitted,

Darius Wadia, L.L.C.

/s/
_____
By:  Darius Wadia (Bar number DW8679)
Attorney for Plaintiff
233 Broadway, Suite 2208
New York, New York  10279
dwadia@wadialaw.com
(212) 233-1212